COURT OF APPEALS
DECISION
DATED AND FILED

April 13, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2090-FT**

STATE OF WISCONSIN

Cir. Ct. No. **2021ME86**

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF P.C.:

WALWORTH COUNTY,

    PETITIONER-RESPONDENT,

V.

P.C.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Walworth County: KRISTINE E. DRETTWAN, Judge. *Affirmed.*

¶1 KORNBLUM, J.[1] P.C. appeals from a commitment order entered pursuant to WIS. STAT. ch. 51. P.C. argues that Walworth County ("the County")

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

failed to establish dangerousness pursuant to WIS. STAT. § 51.20(1)(a)2. We conclude that the evidence supports the circuit court's findings. Accordingly, we affirm.

## BACKGROUND

¶2 On July 19, 2021, a three-party petition for examination was filed against P.C. pursuant to WIS. STAT. § 51.20(1)(b) and (c). At a probable cause hearing, the circuit court found probable cause to believe that P.C. was mentally ill, a proper subject for treatment, and a danger to himself or others. The circuit court ordered that P.C. be held at the Winnebago Mental Health Institute until a final commitment hearing and ordered an evaluation by two mental health professionals. Prior to the final commitment hearing, Dr. Leslie Taylor and Dr. Marshall Bales filed examiner reports.

¶3 A final commitment hearing was held on August 4, 2021. Bales testified at the hearing, telling the circuit court that P.C. suffered from schizophrenia, paranoia, and delusions. Bales testified that P.C. was a proper subject for treatment and presented a danger to others, particularly P.C.'s father. Bales stated that P.C. exhibited multiple threatening behaviors towards his father and opined that P.C. "is going to be unable to care for his basic needs on his own and if he doesn't get help, I'm not sure he can return to live with his father and that means he's going to be homeless." Bales further stated that P.C. denied having a mental illness, had "gross impairment of insight and judgment," and refused to acknowledge the need for medication.

¶4 T.C., P.C.'s father, also testified, describing multiple incidents that caused T.C. to fear for his safety. T.C. testified that P.C. had been living with him since November 2020. T.C. testified that while on a long-distance drive with P.C.,

2

P.C. threated to jump out of the moving vehicle multiple times. T.C. also testified that in June 2021, while walking down a flight of stairs, three books fell on him from a shelf above the stairway. T.C. said that he did not actually see P.C. push the books, but said that he looked up after the books struck him and saw P.C. looking down at him and smiling. T.C. described another incident in which he was ascending the staircase with P.C. behind him. T.C. testified that he felt a "swipe" at his legs, which almost cause him to fall while holding empty glass liquor bottles. T.C. stated that he retrieved the empty bottles from P.C.'s bedroom and P.C. "wasn't happy." T.C. further testified that he feared P.C. would poison him because P.C. stated that he could "put something" in T.C.'s vitamin and medication bottles, as well as in T.C.'s CPAP machine. T.C. testified that P.C. refused to let him sleep one night and knocked on T.C.'s locked bedroom door until P.C.'s knuckles bled. T.C. stated that he was concerned for his safety because P.C. had grabbed and tried to choke him several years ago.

¶5 T.C. also described two incidents of P.C. wandering off on walks in the middle of the night. T.C. stated that in May 2021, he received a phone call in the middle of the night from someone asking T.C. to pick P.C. up from a location approximately ten miles from T.C.'s home. T.C. stated that P.C. walked most of the night without reflective gear or flashlights. T.C. also stated that the following week he received a phone call from the Lake Geneva Police Department asking T.C. to pick P.C. up after police found P.C. walking in the middle of the night. T.C. stated further that on other occasions, P.C. has "gone from door to door knocking on people's doors at 6:00 in the morning scaring people."

¶6 The circuit court found both Bales and T.C. credible and determined that P.C. was a proper subject for commitment as he had a treatable mental illness. The circuit court stated that "the County has clearly met by clear and convincing

evidence that [P.C.] is dangerous under the standards of Chapter 51," and entered an order committing P.C. for six months, as well as an order for involuntary medication and treatment during the period of his commitment. This appeal follows.

## DISCUSSION

¶7      On appeal, P.C. argues that the evidence was insufficient to establish by clear and convincing evidence that he was a danger to himself or others, and that the circuit court failed to make sufficient factual findings pursuant to WIS. STAT. § 51.20(1)(a)2.a.-e. The County contends that P.C.'s appeal is moot because the initial commitment order at issue has expired.

¶8      We generally do not consider moot issues. *See State ex rel. Olson v. Litscher*, 2000 WI App 61, ¶3, 233 Wis. 2d 685, 608 N.W.2d 425. An issue is moot when its resolution will have no practical effect on the underlying controversy. *Id.* Although P.C.'s commitment order has expired, we conclude that regardless of whether P.C.'s appeal is moot, there is sufficient evidence to support the circuit court's dangerousness finding. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive."). We address the merits of P.C.'s arguments and disagree that the County failed to establish dangerousness under WIS. STAT. §51.20(1)(a)2.

¶9      WISCONSIN STAT. § 51.20(1)(a)2. provides five different means of demonstrating that a person is dangerous. The statute states that an individual is "dangerous" if any of the following is fulfilled:

a. Evidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm.

b. Evidences a substantial probability of physical harm to other individuals as manifested by evidence of recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm ….

c. Evidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals ….

d. Evidences behavior manifested by recent acts or omissions that, due to mental illness, he or she is unable to satisfy basic needs for nourishment, medical care, shelter or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation, or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness ….

e. For an individual, other than an individual who is alleged to be drug dependent or developmentally disabled, after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her and because of mental illness, evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; and evidences a substantial probability, as demonstrated by both the individual's treatment history and his or her recent acts or omissions, that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions ….

5

*Id.*; *see also*, **Langlade Cnty. v. D.J.W.**, 2020 WI 41, ¶30, 391 Wis. 2d 231, 942 N.W.2d 277.

¶10     The record supports the circuit court's determination that P.C. was dangerous under WIS. STAT. § 51.20(1)(a)2.  Based on the testimony of the witnesses, the circuit court found that P.C. posed a danger both to T.C. and himself.  The circuit court discussed T.C.'s testimony that P.C. pushed and tripped him, pushed books onto his head, and threatened to poison him multiple times.  The circuit court also referenced T.C.'s testimony that P.C. would bang on T.C.'s locked bedroom door all night to the point of bloodying his fists.  The circuit court discussed the harm P.C. posed to himself by referencing P.C.'s actions of going door to door in the middle of the night, scaring people in the early morning hours, and walking on dark county roads without reflective gear.  The circuit court noted that P.C.'s excursions could have resulted in a scared resident confronting P.C. with a weapon.  The circuit court found P.C.'s various behaviors consistent with Bales's assessment that P.C. did not comprehend the need for treatment, had severely impaired judgment, and posed a legitimate danger to both his father and himself.  The record supports the circuit court's finding that there was clear and convincing evidence that P.C.'s untreated mental illness and his impaired judgment created a substantial probability of harm to himself or others.[2]

---

[2] P.C. also argues that the circuit court failed cite to the specific subsections of WIS. STAT. § 51.20(1)(a)2., and thus failed to comply with the supreme court's decision in **Langlade County v. D.J.W.**, 2020 WI 41, ¶30, 391 Wis. 2d 231, 942 N.W.2d 277.  This case is distinguishable from **D.J.W.** because although the circuit court did not specifically reference each statutory subsection, the court's findings were specific, tracked the statutory criteria, and are supported by the record.

¶11 For the foregoing reasons, we affirm the involuntary commitment order.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.